**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **TERRY WILSON, by and through BRENT WILSON and LISA EARLES, individually, and as attorneys-in-fact for TERRY WILSON,**<br><br>**Plaintiffs,**<br>**v.**<br><br>**BROOKDALE SENIOR LIVING INC., et al.,**<br><br>**Defendants.** | **Case No. 2:26-cv-02075-JMK-RES** |

**MEMORANDUM AND ORDER**

This is a medical malpractice action arising out of the provision of health care services to Terry Wilson ("Wilson") at the Brookdale Leawood State Line senior living facility in Leawood, Kansas ("Brookdale Facility"). Wilson and his attorneys-in-fact, Brent Wilson and Lisa Earles, seek to recover damages from Defendants Brookdale Senior Living Communities Inc. ("Brookdale Communities") and Brookdale Senior Living Inc. ("Brookdale Senior Living"), asserting that Defendants breached the standard of care, violated the Kansas Consumer Protection Act, and committed fraud. Brookdale Communities owns and operates the Brookdale Facility, while Brookdale Senior Living billed and received payments associated with the services provided to Wilson. Defendants now move to dismiss Wilson's state law claims arising under Missouri law in Counts I and II, Count II for failure to state a claim under Rule 12(b)(6), and Counts III and IV for failure to state a claim under Rule 12(b)(6) and for pleading deficiencies under Rule 9(b).

## I. BACKGROUND[1]

Wilson is an insulin-treated, Type 2 diabetic. Doc. 34 at ¶ 11. Wilson also suffers from dementia and diminished executive functioning. *Id.* On July 1, 2025, Wilson's children and attorneys-in-fact, Brent Wilson and Lisa Earles, toured the Brookdale Facility while considering Wilson's possible placement there. *Id.* at ¶ 12. Kristy Bennett, the facility's Executive Director, repeatedly represented to Brent and Lisa that the Brookdale Facility was equipped, prepared, and trained to handle Wilson's required level of care, including management and treatment of his insulin-treated diabetes. *Id.* On July 2, Bennett assessed Wilson and assured Brent and Lisa that the Brookdale Facility was able to meet all of Wilson's needs, including management and treatment of his insulin-treated diabetes. *Id.* at ¶ 13.

On July 3, Wilson was admitted to the Brookdale Facility. *Id.* at ¶ 14. Shortly after his admission that day, Cartesha Carson, the Brookdale Facility's Director of Health and Wellness informed Brent and Lisa that she was "not part of the assessment process" and that the Brookdale Facility had never had a patient or resident with diabetes. *Id.* at ¶ 15. Around 9:30 p.m. the same day, Carson contacted Lisa and Brent and requested that they purchase a blood-sugar test kit for Wilson because the Brookdale Facility did not have one. *Id.* at ¶ 18. Brent and Lisa delivered the test kit to employees at the Brookdale Facility, one of whom was a nurse, and both employees appeared unsure how to use the test kit. *Id.* One of those employees reiterated that the Brookdale Facility had never had a resident who was diabetic. *Id.*

On July 5, Wilson exhibited signs of insulin mismanagement, including fatigue, confusion, weakness, shakiness, nausea, vomiting, sweating, overall rapid decline, inability to converse, loss

[1] The facts are taken from Plaintiffs' Amended Complaint and are accepted as true for purposes of this Memorandum and Order.

of appetite, and refusal to eat or feed himself. *Id.* at ¶ 20. On July 7, Bennett reassured Lisa that the Brookdale Facility was able to manage his care. *Id.* at ¶ 21.

On July 8, after Wilson began vomiting and experiencing nausea, Lisa and Brent requested a referral to another facility. *Id.* at ¶ 22. Bennett discussed "carve-out" fees she anticipated charging to Wilson's account and requested that Lisa send an email stating that she was not moving Wilson due to fault or wrongdoing on the part of the Brookdale Facility. *Id.* Carson also requested that Lisa and Brent sign a care plan backdated to the July 3 admission date as a condition for processing their referral request. *Id.* at ¶ 23.

On July 9, around 5 p.m., a Brookdale Facility licensed practical nurse checked Wilson's blood sugar, which was 90mg/dl in a fasting state, and administered 17 units of insulin. *Id.* at ¶ 25. Within a few hours, Wilson went into hypoglycemic shock. *Id.* By 6:58 p.m., Wilson was non-responsive. *Id.* Lisa called 911 and Wilson was transported to Menorah Medical Center, where ER staff told Lisa and Brent that the Brookdale Facility had made "a big oopsie" and a "major mistake" by overdosing Wilson with insulin, causing acute and life-threatening hypoglycemia. *Id.* Since the July 2025 overdose, Wilson has endured nausea, fatigue, and overall diminished capacity, including being unable to stand, sleeping most of the day, being non-conversant, and being unable to use a traditional wheelchair due to his overall diminished strength. *Id.* at ¶ 27.

Wilson now brings negligence and lost chance of recovery claims, and all three plaintiffs bring claims for violation of the Kansas Consumer Protection Act and fraud. Defendants move to dismiss all but Wilson's negligence claim brought under Missouri law.

## II. LEGAL STANDARD

A complaint survives a Rule 12(b)(6) motion to dismiss when it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if it contains factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). A court accepts as true all well-pleaded allegations in the complaint but need not accept legal conclusions. *Id.*

## III. ANALYSIS[2]

### A. Wilson has abandoned his negligence and lost chance of recovery claims brought under Missouri law.

As an initial matter, Wilson brought negligence and lost chance of recovery claims under Kansas law and, alternatively, under Missouri law. Brookdale Senior Living moved to dismiss the claims pled under Missouri law on the basis that all operative conduct occurred in Kansas. In response, Wilson agreed that Kansas law governs his claims and agreed to abandon his claims brought under Missouri law in Counts I and II.[3] Accordingly, the Court finds these claims abandoned and Wilson may proceed only under Kansas law as to Counts I and II of the Amended Complaint. *Cl. G. v. Siegfried*, 38 F.4th 1270, 1282 (10th Cir. 2022) (affirming district court's dismissal of an abandoned claim).

---

[2] Brookdale Senior Living filed its Motion to Dismiss on May 18, 2026. Brookdale Communities filed its own Motion to Dismiss on June 10, 2026, which contained nearly identical arguments for dismissal. Where Defendants' arguments do not diverge, the Court will address the arguments together.

[3] In its Motion to Dismiss, Brookdale Communities asserted that Wilson's Missouri law claims should be dismissed because he abandoned them in response to Brookdale Senior Living's Motion to Dismiss. Wilson conceded in his response to Brookdale Communities' motion that he had abandoned his Missouri law claims and did not oppose dismissal on the basis of abandonment.

**B. The Court declines to dismiss Wilson's lost chance of recovery claim brought under Kansas law.**

Defendants next argue that Wilson's lost chance of recovery claim brought under Count II of the Amended Complaint should be dismissed because it is not a standalone claim and because Wilson has not sufficiently pled a "substantial" lost chance. In Kansas, lost chance of recovery claims arise when alleged malpractice reduces an already injured or ill person's chance of surviving the injury or illness or reduces that person's chance of a better recovery. *Delaney v. Cade*, 255 Kan. 199, Syl. ¶ 1 (1994). A loss of chance claim, like a standard negligence claim, requires the plaintiff to prove: "(1) [t]he physician, or other health care provider, was negligent in the treatment of the patient; (2) the negligence resulted in harm to the patient; and (3) the plaintiff suffered damages." *Id.* at 202. But a lost chance claim allows a plaintiff to proceed under a reduced standard of causation. *Id.* at 211.

First, Defendants argue that although the Kansas Supreme Court recognized lost chance of recovery claims in *Delaney*, the court modified causation within medical negligence claims rather than creating a distinct tort. And so, Defendants argue that Wilson cannot bring both medical negligence and lost chance claims in this lawsuit. But, as noted by Wilson in his response to the Motions to Dismiss, the Federal Rules allow alternative pleading. Specifically, "[a] party may set out 2 or more statements of a claim . . . alternatively or hypothetically, either in a single count . . . or in separate ones." Fed. R. Civ. P. 8(d)(2). Although the Court agrees that Wilson cannot recover under both a standard negligence theory and a lost chance theory, this does not prohibit him from pleading both in his Amended Complaint. The Court declines to dismiss Count II as an alternative theory of recovery.

Next, Defendants argue that Wilson has failed to plead "the required 'substantial' lost chance." Doc. 35 at 4. They also assert that Wilson failed to identify his "pre-existing probability

of recovery, the degree of reduction allegedly caused by Defendant, any facts suggesting substantial diminution, or any basis from which such a loss could be calculated." *Id.* at 5. But these demands are too stringent for the pleading stage. Wilson has alleged that he was, and is, an insulin-treated diabetic, that Defendants failed to recognize and manage his deteriorating condition, and this failure resulted in hypoglycemic shock, causing Wilson long-term diminished capacity. These allegations mirror the elements set forth in *Delaney* and set forth a plausible claim for relief. *See Delaney*, 255 Kan. at 202.

Although Defendants argue that these allegations "describe a worsened outcome, not a lost probabilistic chance," *Delaney* set forth the necessary proof for a lost chance claim at trial, not a heightened pleading standard. Doc. 35 at 5; *Delaney*, 255 Kan. at 215–16. And, in doing so, the court contrasted the traditional causation standard with the relaxed standard in lost chance claims. *Delaney*, 255 Kan. at 204–12. Wilson need not allege probabilities in his Amended Complaint to set forth a plausible claim for relief. Defendants' motions to dismiss Count II under Kansas law are denied.

### C. Plaintiffs' KCPA claim against Brookdale Communities is dismissed, but Plaintiffs' KCPA claim against Brookdale Senior Living may proceed.

Defendants next move to dismiss Plaintiffs' Kansas Consumer Protection Act ("KCPA") claim. The KCPA protects consumers from suppliers who commit deceptive and unconscionable practices. K.S.A. 50-623. Under the KCPA, a "supplier" is one "who, in the ordinary course of business, solicits, engages in or enforces consumer transactions." K.S.A. 50-624(*l*). A "consumer" is an individual "who seeks or acquires property or services for personal, family, household, business or agricultural purposes." K.S.A. 50-624(b). The KCPA provides that suppliers shall not "engage in any deceptive act or practice in connection with a consumer transaction." K.S.A. 50-626(a).

But the KCPA does not allow for a private cause of action against a licensed health care provider for personal injury alleged to have resulted from medical negligence. K.S.A. 50-635(b). This exemption includes misrepresentations and omissions occurring during the informed consent process. *Kelly v. VinZant*, 287 Kan. 509, 518 (2008). The term "health care provider" under the KCPA includes medical care facilities, nursing facilities, assisted living facilities, and residential healthcare facilities licensed by the state of Kansas. K.S.A. 50-635(b); K.S.A. 65-4915(a)(1)(A); K.S.A. 40-3401(f)(1)(D), (V)-(X). The KCPA places the burden on suppliers to establish the applicability of the exemption. K.S.A. 50-635(c).

Plaintiffs allege that Defendants supplied services to Terry Wilson as a consumer and that Plaintiffs purchased and paid for those services for personal, family, and/or household services. They also allege that Defendants repeatedly made false and misleading statements and omissions in connection with these transactions and that these statements caused Plaintiffs harm, including inducing then to pay Defendants to place Wilson in a facility that Defendants knew, or should have known, was not equipped or prepared to provide adequate care to Wilson.

Defendants now assert that Plaintiffs' KCPA claim should be dismissed because (1) the KCPA prohibits claims against licensed health care providers for medical negligence; (2) Plaintiffs failed to plead the KCPA claim with particularity; and (3) Lisa Earles and Brent Wilson cannot recover for Terry Wilson's personal injuries. Although Defendants move for dismissal on the same grounds, because Plaintiffs' allegations about Brookdale Communities and Brookdale Senior Living differ, the Court will analyze the claims against them separately.

**1. Plaintiffs' KCPA claim against Brookdale Communities is barred by the health care provider exception to the KCPA.**

Turning first to Brookdale Communities, Plaintiffs do not substantively challenge the assertion that Brookdale Communities is a covered health care provider under the KCPA. Instead,

Plaintiffs emphasize that Brookdale Communities has the burden to show that it is a covered health care provider and argue that Plaintiffs' alleged economic injuries bring their claim outside of the statutory exemption.

Although Brookdale Communities bears the burden to show that it is a covered health care provider under the KCPA, an affirmative defense can justify dismissal so long as the applicability of the defense is evident from the face of the complaint. *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018). Because Plaintiffs allege in the Amended Complaint that Brookdale Communities was licensed by the state of Kansas to operate the Brookdale Facility and was a health care provider who was required to meet a minimum standard of care to protect Mr. Wilson from injury, the Court concludes that, taking the allegations in the Amended Complaint as true, Brookdale Communities is a covered health care provider under the KCPA. *See* K.S.A. 50-635(b); K.S.A. 65-4915(a)(1)(A); K.S.A. 40-3401(f)(1)(D), (V)-(X).

Next, the parties dispute whether Plaintiffs' KCPA claim is one for economic damages or personal injury resulting from medical negligence. The former is allowed under the KCPA, the latter is not. Plaintiffs argue that they are seeking to recover consumer losses relating to Defendants' "senior living services," rather than for Terry Wilson's personal injury. In support of this argument, they assert that Defendants induced them to pay "considerable sums of money," that they paid Brookdale Senior Living over $14,000 for services under false pretenses, and that this economic injury exists independent of Wilson's personal injury claim.

But Plaintiffs' Amended Complaint focused solely on Defendants' representations that they could meet Wilson's medical needs when they were unequipped to do so. Plaintiffs have not alleged any misrepresentations regarding Defendants' "senior living services" outside of their inability to care for Wilson's medical needs. Plaintiffs have therefore failed to allege willful

misrepresentations separate from Defendants' misrepresentations regarding their ability to meet the standard of care. *See Kelly*, 287 Kan. at 518 ("[W]hen fraud is a part of the informed consent process, the claim is for malpractice, not fraud.").

Plaintiffs also argue that the health care provider exception does not cover Defendants' "dubious 'carve out' fees" and affirmative "acts to cover up its malfeasance." Doc. 44 at 11–12. But the Amended Complaint only alleged that a Brookdale Facility employee "discussed" carve-out fees that "she anticipated charging." Doc. 34 at ¶ 22. And although Plaintiffs alleged that Brookdale Facility employees presented them with a backdated care plan five days after Wilson was admitted, Plaintiffs do not allege damages arising from this misrepresentation. And so, Plaintiffs have also failed to allege economic harm separate from the underlying malpractice. *See Kelly*, 287 Kan. at 518 ("[W]hen alleged fraud . . . gives rise to damages separate and distinct from those flowing from the malpractice, a plaintiff is entitled to allege and prove such a cause of action."). Because Plaintiffs bring a claim against a party that they allege is a licensed health care provider for personal injury and damages arising out of the informed consent process, Plaintiffs' KCPA claim against Brookdale Communities is dismissed.

**2. The Amended Complaint does not establish that Brookdale Senior Living is an exempt health care provider under the KCPA.**

Like Brookdale Communities, Brookdale Senior Living argues that the health care provider exception to the KCPA precludes Plaintiffs' claim against it. Although Plaintiffs do not allege in the Amended Complaint that Brookdale Senior Living was an operator of a medical care facility licensed by the state of Kansas, Brookdale Senior Living argues that because Plaintiffs referred to Defendants collectively throughout the Amended Complaint, Brookdale Senior Living should also be considered a health care provider under the KCPA. But the KCPA places the burden on suppliers to establish their exemption under K.S.A. 50-635(b) and Plaintiffs did not refer to

Defendants collectively in asserting that Brookdale Communities was licensed by the state of Kansas to operate the Brookdale Facility. K.S.A. 50-635(c); *see also* Doc. 34 at ¶ 5.

Likewise, the Court is not convinced that Plaintiffs' allegation that Wilson's injuries were caused "by Brookdale's breaches of the standards of care applicable to Brookdale as a healthcare provider" establishes that Brookdale Senior Living is a health care provider under the KCPA. Doc. 34 at ¶ 32. Because the Court cannot conclude from the face of the Amended Complaint that Brookdale Senior Living is an exempt health care provider under the KCPA, Brookdale Senior Living's Motion to Dismiss Plaintiffs' KCPA claim on the basis that it is an exempt health care provider is denied.

**3. Plaintiffs' KCPA claim is pled with particularity.**

Brookdale Senior Living also argues that Plaintiffs' KCPA claim should be dismissed for failure to plead with particularity the circumstances constituting fraud. *See* Fed. R. Civ. P. 9(b). But Plaintiffs' detailed Amended Complaint clearly stated the who, what, when, where, and why of their fraud claim. *See Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) ("More specifically, this court requires a complaint alleging fraud to set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.") (citation and internal quotation marks omitted).

Plaintiffs alleged the names and positions of the Brookdale Facility employees who claimed that Brookdale was equipped to care for Wilson's diabetes, the dates and circumstances under which they made the representations, and their belief that the employees made the representations to "'close' a sale" despite the Brookdale Facility lacking the competency to care for Wilson. Doc. 34 at ¶ 16. They also specifically alleged that these misrepresentations resulted in Wilson being placed in a facility that was not equipped to care for his needs, ultimately leading to an insulin overdose and hypoglycemic shock. This is precisely the detail required by Rule 9(b).

Brookdale Senior Living's argument that Plaintiffs have failed to plead their KCPA claim with particularity fails.

**4. Plaintiffs Brent Wilson and Lisa Earles' KCPA claim against Brookdale Senior Living is not subject to dismissal.**

Brookdale Senior Living next argues, without citation, that Plaintiffs Brent Wilson and Lisa Earles cannot bring a claim under the KCPA because they did not allege that they personally received health care services or suffered a medical injury. But the KCPA does not require that Brent Wilson and Lisa Earles suffer a personal injury to have economic harm under the KCPA. *See Gonzalez v. PepsiCo, Inc.*, 489 F. Supp. 2d 1233, 1249 (D. Kan. 2007); *see also* K.S.A. 50-634. And Plaintiffs allege that they paid for services for Terry Wilson based on Defendants' misrepresentation that the Brookdale Facility was equipped to handle his care. Brent Wilson and Lisa Earles have therefore plausibly alleged that they suffered economic damages when they were induced to pay Defendants for services that Defendants were not equipped to provide.

Because the Amended Complaint does not establish that Brookdale Senior Living is a covered health care provider under the KCPA, because Plaintiffs have pled their claims with particularity, and because Brent Wilson and Lisa Earles need not suffer a personal injury to have economic harm under the KCPA, all three plaintiffs may proceed in their KCPA claim against Brookdale Senior Living.

**D. The Court dismisses Plaintiffs' fraud claim against both defendants.**

Defendants next move to dismiss Plaintiffs' fraud claim. To state a claim for fraud in Kansas, a plaintiff must allege:

> (1) false statements were made as a statement of existing and material fact; (2) the representations were known to be false by the party making them or were recklessly made without knowledge concerning them; (3) the representations were intentionally made for the purpose of inducing another party to act upon them; (4) the other party reasonably relied and acted upon the representations made; and (5) the other party sustained damage by relying upon them.

*Kelly*, 287 Kan. at 515. Defendants argue that Plaintiffs did not plead their fraud claim with particularity, that Plaintiffs' allegations do not show scienter, that Plaintiffs did not plead justifiable reliance and damages distinct from their negligence claim, and that the fraud claim is duplicative of the medical negligence claim. Because Defendants' assertion that Plaintiffs' fraud claim is duplicative of the medical negligence claim is dispositive, the Court will address it first.

The Kansas Supreme Court has made clear that fraud claims are subsumed by medical malpractice claims where the misconduct falls within the "breach of the legal duty which every doctor has the obligation to uphold." *Kelly*, 287 Kan. at 517 (quoting *Bonin v. Vannaman*, 261 Kan. 199, 210 (1996)); *see also Minshew v. Krumme*, 825 F. Supp. 3d 1223, 1235 (D. Kan. 2026) ("This rule applies equally to negligence claims against medical institutions."). Although a medical provider's representations in the informed consent process may meet the elements of fraud, the plaintiff's claim still sounds in malpractice. *Bonin*, 261 Kan. at 210; *see also Luttrell v. Brannon*, 2018 WL 3032993, at *9 (D. Kan. June 19, 2018). Plaintiffs may proceed with fraud claims, however, where they allege fraud occurring "separately from and subsequent to the malpractice" and giving rise "to damages separate and distinct from those flowing from the malpractice." *Kelly*, 287 Kan. at 518.

For their fraud claim, Plaintiffs allege that Defendants misrepresented their ability to meet the standard of care and that the misrepresentations induced Plaintiffs to pay Defendants for care that Defendants were unequipped to provide. Although Plaintiffs argue in response to Defendants' motions to dismiss that their payments to Defendants are an economic loss independent of Wilson's personal injury, the Amended Complaint directly ties Plaintiffs' payments to Defendants' representation that they could provide adequate care for Wilson. And Plaintiffs make no other allegations of economic loss. Because Plaintiffs' economic harm is directly tied to Defendants'

inability to provide adequate medical care to Wilson, Plaintiffs' fraud claim is subsumed by Wilson's malpractice claim and barred by Kansas law. *See Kelly*, 287 Kan. at 518 ("*Bonin* specifically noted a patient could not state an independent claim based upon a physician's false representation that he or she possessed a skill."). Count IV is dismissed as to both defendants.

## IV. CONCLUSION

Counts I and II of the Amended Complaint survive to the extent they are brought under Kansas law and are dismissed to the extent they are brought under Missouri law. Count III is dismissed against Defendant Brookdale Senior Living Communities Inc. but survives against Defendant Brookdale Senior Living Inc. Count IV is dismissed in full against both defendants.

THE COURT THEREFORE ORDERS that Brookdale Senior Living Inc.'s Motion to Dismiss (Doc. 35) is GRANTED IN PART and DENIED IN PART.

THE COURT FURTHER ORDERS that Brookdale Senior Living Communities Inc.'s Motion to Dismiss (Doc. 42) is GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED.

Dated: November 5, 2026

s/ Jeffrey M. Kuhlman
JEFFREY M. KUHLMAN
UNITED STATES DISTRICT JUDGE